**Betty L. GOLD, on behalf of the Susquehanna Corporation, Appellee,**

**v.**

**Arthur W. SLOAN and Glenn L. Sloane, Appellants,**

**Securities and Exchange Commission, Amicus Curiae.**

**Betty L. GOLD, on behalf of the Susquehanna Corporation, Appellant,**

**v.**

**Keith E. RUMBEL, Appellee,**

**Securities and Exchange Commission, Amicus Curiae.**

**Betty L. GOLD, on behalf of the Susquehanna Corporation, Appellee,**

**v.**

**Arch C. SCURLOCK, Appellant,**

**Securities and Exchange Commission, Amicus Curiae.**

**Nos. 71–2180 to 71–2182.**

United States Court of Appeals,
Fourth Circuit.

Feb. 1, 1974.

For opinions see 4 Cir., 486 F.2d 340.

---

1. We assume that the District Court was acting pursuant to 28 U.S.C. § 1915(d).

## ON PETITION FOR REHEARING EN BANC

HAYNSWORTH, Chief Judge:

The plaintiff filed a petition for rehearing with a suggestion of a rehearing en banc. There was a request for a poll of the en banc court, but the suggestion has failed to receive the affirmative vote of a majority of the judges. Since a majority of the panel is not disposed to grant a rehearing of the case, the petition for rehearing will be denied.

I was one of those who voted for a rehearing en banc. I did so not because I thought the plaintiff got less than her due under the majority opinion; I think the majority gave her more than her due, but I voted for a rehearing in an effort to obtain an opportunity to attempt to persuade my colleagues to adopt an approach which apparently was not considered by any member of the panel. I take this opportunity, however, for a brief expression of my views for whatever contribution that expression may make in subsequent cases. I speak only for myself, of course. The defendant, Sloan, sought no rehearing, and the court's denial of the plaintiff's petition for rehearing carries with it no implication of endorsement or rejection of my views.

### I

In Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S. Ct. 1736, 36 L.Ed.2d 503, the Supreme Court adopted the evolving notion that mergers should be regarded as a purchase or a sale of securities only if the transaction lent itself to the possibility of abuse of inside information. In Kern it was easy for the majority of the Supreme Court to determine that there was no possibility of abuse of Occidental's position, for, though a statutory insider because of its recent acquisition of more than ten per cent of Kern County's stock, it demonstrably was not an actual insider and had no access to inside information. Appropriately, the Court went no further than the needs of that case, observing that it was not holding that under no circumstances could a merger be properly treated as a purchase or a sale under § 16(b) and that it was holding only that it was not a sale under the circumstances presented by that case.

The Supreme Court's opinion in Kern should not be read as holding more than it says. Judges traditionally write narrowly. A holding that a merger is not a sale by a statutory insider who actually has no access to inside information cannot be read as a holding that a merger is a sale by a statutory insider who does have access to inside information. If there is no access to inside information there is no possibility of abuse of inside information, but possibility of abuse is the touchstone, and there may be no such possibility even though the statutory insider does have access in general to inside information. Since Occidental had no access to inside information it was natural that the decision that there was no possibility of abuse of its position was put upon that ground and it is readily understandable that the majority did not write broadly to hold that the merger there would have presented no possibility of abuse even if Occidental had access to inside information.

We have that question in this case, for Sloan was required to disgorge his profit simply because he was the chief executive officer of ARC and the principal negotiator of the agreement with Susquehanna. I think he should not be required to surrender that profit because I find no possibility of abuse by him in the exchange pursuant to the merger agreement or in the negotiations leading up to it.

### II

When an insider purchases corporate stock for cash, he alters his relative position with respect to other stockholders. He does the same thing when he sells the stock. In a normal purchase and sale situation, short term profits by insiders, who are thus attempting to benefit themselves in a manner in which oth-

er shareholders do not participate, are quite unseemly. Section 16(b) clearly requires that they turn over their short swing profits to the corporation, so that all shareholders participate in them.

The usual merger situation is quite different, for what advantage the insider gains is realized proportionately by every other stockholder. The insider is not in an adverse position with respect to any other stockholder, though he is in such a position when he buys or sells stock. What the insider does to effectuate the merger is done in the interest of all stockholders, and, if the merger proves beneficial, all the stockholders ratably share the gain.

Moreover, in a merger situation, the insider's position as an insider is more technical than substantive. The requirement that all relevant information be disclosed to all stockholders leaves no relevant inside information to the exclusive possession of the insider, and there are adequate remedies for enforcement of the disclosure requirements.

In the normal merger situation, therefore, no insider has access to any inside information unavailable to all stockholders alike. In the exchange, each shareholder is treated equally and all benefits from the merger are shared proportionately by all stockholders of each constituent corporation. The insider gains nothing disproportionately, and no outside stockholder loses any gain or advantage disproportionately.

In the usual merger situation, therefore, there is simply no potential for abuse by insiders of the sort contemplated by § 16(b). Unless the insider has done something to alter his position relative to other stockholders, no such exchange ought to terminate an old hold-

ing period and start a new one running.[1] When the insider's advantage, derived from the exchange, does not differ in kind or quality from that realized by every other stockholder, there is simply no reason for creating a new holding period for the insider. Starting and stopping holding periods for the insider when he does something which alters his relative position with other stockholders is appropriate; it is not when he has not.

### III

Finding that a merger does not constitute a transaction for the purposes of § 16(b) does not leave outsiders without an available remedy when an insider reaps profits for himself by misuse of inside information. Section 16(b) was designed to be a simple, mechanical measure, aimed at a particular kind of speculative abuse, short-swing profiteering based on inside information. Balancing the competing factors, Congress chose ease of enforcement and predictability at the expense of some unfairness and overbreadth in administration. Partially in recognition of this harshness, the remedy for a § 16(b) violation is only restitution.

The appropriate provision in a situation where a sale of stock follows closely upon a merger is Rule 10b–5, with its attendant requirement of actual use of inside information. Whatever justification existed for the use of § 16(b) as a broad, anti-fraud provision before the development of Rule 10b–5, the subsequent maturity of the latter provision after SEC v. Texas Gulf Sulphur Co., 2 Cir., 401 F.2d 833, should assist in confining § 16(b) to the area where it can function effectively as a narrow, objective response to a particular kind of speculative abuse.[2]

1. Some such potential for abuse might arise in an extraordinary situation, but such potential would depend upon the addition of some other ingredient. It was appropriate, therefore, for the Court in *Kern* to observe, as it did, that it was not suggesting that an exchange of stock in consummation of a merger "may never result in § 16(b) liability," 411 U.S. 582, 600, 93 S.Ct. 1736, 1747, for it

may in a situation in which insiders have not acted faithfully in the interests of all stockholders.

2. There is a possibility, of course, that Sloan misused inside information when he sold his Susquehanna stock. In that event, he should be liable under Rule 10b–5, regardless of his holding period. Possibility of abuse at the

## IV

If it should be held that the insider having access in general to inside information, though there is no undisclosed inside information relevant to the merger, effects a sale of his old stock when he exchanges it for stock of the surviving corporation, a most extraordinarily illogical pattern of application of § 16(b) would result.

If corporations A and B are merged under an agreement by which A is the survivor, A's insiders would simply retain their stock certificates, but B's insiders would exchange their stock certificates for fresh pieces of paper with A's name on them. B's insiders will be subject to potential liabilities under § 16(b), but A's will not, though there is no substantive difference in the two groups of insiders. The surviving corporation usually will be the larger one, but that is not always the case. It was not the case in the merger involved in Commissioner of Internal Revenue v. Morris Trust, 4 Cir., 367 F.2d 794, where a larger state bank and a smaller national bank were merged under an agreement under which the smaller national bank was the survivor. If two state banks decide to merge and their directors think it wise to have the merged banks operate under a national charter, the merger agreement may well call for the classical consolidation model in which a new national bank is organized and the stockholders of both state banks exchange their old certificates for new pieces of paper with the national bank's name on them. In such an event, the insiders of both A and B will be subject to possible § 16(b) liabilities.

When a merger is contemplated, it may be important to all of the stockholders, collectively, to select one or the other of the merger participants as the surviving corporation, or to form a new corporation to acquire them both. That kind of business decision has nothing to do with the purposes of § 16(b), and it is simply irrational to suppose that Congress intended that the application of § 16(b) would depend upon the exercise of that kind of business judgment in the interest of all of the stockholders. If someone had proposed that Congress provide expressly that the insiders of any corporation that did not survive a merger would be subject to § 16(b) liability if they had purchased stock in the old corporation within six months of the merger or sold the stock of the survivor within six months after the merger, but the insiders of any surviving corporation would be subject to no such liability under any circumstances, it is hardly to be doubted that the Congress would have rejected the proposal out of hand.

If § 16(b) recognizes mergers in such fashion, its impact may be readily avoidable. If the continuing business will be served equally well by A's charter or by B's and A's insiders have recently purchased shares of A's stock while B's insiders have neither purchased B's shares recently nor sold A's, liability is readily avoidable by making B the surviving corporation.

If an exchange of stock pursuant to a merger agreement is a sale and purchase by the insiders of the corporation which did not survive, the affected insiders are put in a position in which their individual interests may be in conflict with the interests of the stockholders collectively. The proposed merger agreement may be very much in the interest of the stockholders, collectively. If the insiders are exposed to potential § 16(b) liabilities, however, notwithstanding full disclosure of all relevant information and their receipt of no disproportionate advantage, their individual interests may tempt them to oppose the merger. If anyone

---

time of sale, however, has nothing to do with the possibility of abuse at the time of the exchange under the merger agreement. That exchange, under § 16(b), is a transaction stopping and starting holding periods only if a possibility of abuse inheres in it. For a discussion of the distortion of § 16(b) by its use where Rule 10b–5 would have been more appropriate, see, Note, Reliance Electric and 16(b) Litigation: A Return to the Objective Approach, 58 Va.L.Rev. 907 (1972).

is held subject to § 16(b) liability, despite faithful performance of his fiduciary duty, he does not derive proportionate advantages from the merger enjoyed by all other stockholders.

Consider, for instance, the hypothetical case of a man recently employed as the chief executive officer of a corporation and who, contemporaneously, invests a substantial portion of his resources in its stock. Soon he finds that a very advantageous merger can be effected, but not on terms which would make his corporation the survivor. If he does not report the possibility of the merger to his directors or, after reporting it, he opposes it, he is faithless to his duty. If he performs his fiduciary duty to the other stockholders and the merger is accomplished, he has subjected himself to § 16(b) liability, so that he is penalized for his faithfulness and deprived of the proportionate advantage realized out of the merger by all of his fellow stockholders.

These kinds of weird and completely unjustifiable results are inescapable unless the rule be what I suggest. Surely Congress had no intention of penalizing insiders for faithfulness to their fiduciary duties or to subject them to substantial potential § 16(b) liability upon the basis of a resolution by the negotiators of the irrelevant question of the selection of the corporation to survive the merger. Congress should not be thought to have intended results so irrational and quixotic.

## V

For such reasons, in the usual merger situation, I think the insider should not be held to have sold his old securities and purchased new ones if, in the exchange, he has not derived an advantage disproportionate to the advantages gained by his fellow stockholders. Whether a transaction constitutes a transaction for the purposes of § 16(b) depends upon the nature of that transaction, and whether it gives rise to a possibility of speculative abuse. As long as the nature of the transaction *requires* that all shareholders be treated equally, there can be no possibility of abuse, and hence, no § 16(b) transaction. An ordinary merger, because it necessarily treats all shareholders equally, does not give rise to speculative abuse, and should not be considered a transaction for the purpose of § 16(b). I would have voted for reversal as to the defendant, Sloan, as well as to the other defendants in this case.